UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN A. LEFFINGWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:15-cv-00015-TWP-MJD |
| ) | |
| CAROLYN COLVIN, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff John Leffingwell ("Leffingwell") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the District Judge **REVERSE** the decision of the Commissioner and **REMAND** the matter for further consideration.

I. Background

Leffingwell filed his application for DIB and SSI on October 11, 2011, alleging September 28, 2011 as the onset date of his disability. [R. at 20.] In his disability report filed in conjunction with his application, Leffingwell listed "broken back sternum," [sic] spine fusion, depression, hypertension, and inability to read and write as his disabling impairments.[1] [R. at 258.] Leffingwell's application was denied initially on December 29, 2011 and upon

---

[1] Leffingwell recited the relevant factual and medical background in his opening brief. [*See* Dkt. 17.] The Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 18.] Because these facts involve Leffingwell's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and articulate specific facts as needed below.

1

reconsideration on March 28, 2012. [R. at 109, 120.] Leffingwell timely requested a hearing on his application, which was held before Administrative Law Judge Patricia Melvin ("ALJ") on February 8, 2013. [R. at 41.] The ALJ issued her decision on June 17, 2013, again denying Leffingwell's application for DIB and SSI [R. at 32] and on November 4, 2014 the Appeals Council denied Leffingwell's request for review, making the ALJ's decision the final decision of the Commissioner for the purposes of judicial review. [R. at 1-4.] Leffingwell timely filed his Complaint with this Court on January 5, 2015, which Complaint is now before the Court.

## II. Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and he is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for Disability Insurance Benefits and Supplemental Security Income claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes and regulations found within cited court decisions.

three and either cannot perform his past relevant work or has no past relevant work but he can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to his conclusion." *Dixon*, 270 F.3d at 1176.

### III.   The ALJ's Decision

In her decision, the ALJ first determined Leffingwell met the insured status requirements of the Act through June 30, 2014 and has not engaged in substantial gainful activity since September 28, 2011. [R. at 22.] At step two, the ALJ found Leffingwell's borderline intellectual

3

functioning, early degenerative disc disease at T12 to L3, degenerative disc disease with diffuse disc bulging at L5 to S1, and osteoarthritis to be severe impairments, as defined by the Act, because they had a more than minimal effect on Leffingwell's ability to do basic work activities. [*Id.*] However, at step three the ALJ found Leffingwell did not have an impairment that meets or medically equals a Listing by evaluating Listing 1.00 for his musculoskeletal impairments, and Listings 12.02, 12.05, 12.06, and 12.09 for his mental impairments. [R. at 23-26.]

At step three but before step four, the ALJ, after "careful consideration of the entire record," determined Leffingwell had the RFC to perform "light work" with the following additional limitations:

> [H]e can lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6.8 hours per workday with normal breaks; never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; he is limited to work that is simple, routine, repetitive tasks consistent with unskilled work; in a work environment free of fast paced production requirements defined as constant activity with work performed sequentially in rapid succession; involving only simple, work-related decisions, with few, if any work place changes.

[R. at 26.] Having made this RFC assessment, the ALJ found at step four that Leffingwell was unable to perform his past relevant work. [R. at 30.] However, considering Leffingwell's age, education, work experience, and RFC, the ALJ found at step five there were jobs that existed in significant numbers that Leffingwell could perform. [R. at 30-31.] Specifically, the ALJ found Leffingwell was able to perform work as a retail marker, housekeeper/cleaner, and dining room attendant. [R. at 31.] Based on these findings, the ALJ concluded Leffingwell is not disabled, as defined by the Social Security Act. [R. at 31-32.]

## IV. Discussion

On appeal, Leffingwell makes five arguments as to why the decision of the Commissioner should be reversed. First, Leffingwell argues substantial evidence did not support

the ALJ's conclusion that Leffingwell's mental impairments did not meet or medically equal Listing 12.05. Second, he argues the ALJ inadequately analyzed the opinion of his treating physician. Third, he argues the ALJ ignored evidence from a state medical expert that contradicted her findings. Fourth, he argues the ALJ erred in her credibility determination. Finally, he argues the ALJ erred by not incorporating his illiteracy into her RFC assessment.

### A. Listing 12.05 (Intellectual Disability)

Leffingwell first argues the ALJ's denial decision was in error because substantial evidence did not support the ALJ's finding that Leffignwell did not meet or medically equal Listing 12.05(c) (Intellectual Disability). To satisfy Listing 12.05(c), a claimant must show "(1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning initially manifested during the developmental period before age 22; (3) a valid verbal, performance, or full scale IQ of sixty through seventy; and (4) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Marsh v. Colvin*, No. 1:13-CV-00707-JMS-DKL, 2014 WL 1511675, at *3 (S.D. Ind. Apr. 16, 2014) (citing *Adkins v. Astrue*, 226 F. App'x 600, 605 (7th Cir. 2007)); 20 C.F.R. Pt. 404, Subpt. P., App. 1. The claimant bears the burden to prove he satisfies all four requirements in order to meet or medically equal Listing 12.05(c). *Sullivan v. Zelbey*, 493 U.S. 521, 530 (1990); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). Because the ALJ provided substantial evidence to support that Leffingwell does not have deficits in adaptive functioning initially manifested before age 22, the Court finds the ALJ did not err.

A claimant has deficits in adaptive functioning if he is unable "'to cope with the challenges of ordinary everyday life.'" *Charette v. Astrue*, 508 F. App'x 551, 553 (7th Cir. 2013) (citing *Novy v. Astrue,* 497 F.3d 708, 710 (7th Cir. 2007)). When determining if a claimant has deficits in adaptive functioning, the ALJ should consider various factors such as the claimant's

activities of daily life, social interactions with others, and employment history. *See Charette*, 508 F. App'x at 553-54; *Fischer v. Barnhart*, 129 F. App'x 297, 301-02 (7th Cir. 2005); *Adkins*, 226 F. App'x at 605.

The ALJ found Leffingwell's mental impairments cause him only mild difficulties in activities of daily life and social functioning. [R. at 24.] Specifically, she noted Leffingwell's activities of daily life and social interactions were limited primarily because of his physical problems. [*Id.*] Leffingwell does not contest these findings. [*See* Dkt. 17 at 26-29.] Furthermore, the ALJ noted there was no evidence in the record of "adaptive deficits in functioning prior to attaining age 22." [R. at 25.] Leffingwell does not cite to, and the Court does not find, any evidence in the record to contradict the ALJ's conclusion. Instead, Leffingwell argues the ALJ ignored evidence that showed he had **subaverage intellectual functioning** prior to age 22. [Dkt. 17 at 27-29.] However, Leffingwell must show he has **both** deficits in adaptive functioning and subaverage intellectual functioning to meet Listing 12.05(c). *See Adkins*, 226 F. App'x at 605; *Holt v. Colvin*, No. 1:13-CV-1861-WTL-DKL, 2014 WL 6065897, at *4 (S.D. Ind. Nov. 13, 2014). Leffingwell bore the burden to submit evidence to support that he has deficits in adaptive functioning initially manifested prior to age 22, and he failed to satisfy that burden. *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) (citing *Sullivan,* 493 U.S. at 531); *see also Fischer*, 129 F. App'x at 302 (finding the ALJ had substantial evidence for finding the claimant did not meet Listing 12.05 when the claimant failed to "point[] to any evidence in the record that identifies deficits in his adaptive functioning prior to age twenty-two, as required by the listing.").Thus, the Court finds the ALJ did not err in finding that Leffingwell's impairments did not meet or medically equal Listing 12.05(c).[3]

---

[3] Leffingwell argues the ALJ applied an incorrect legal standard when she found "there is no evidence of . . . **widespread** adaptive deficits in functioning prior to attaining age 22 in the record." [R. at 25 (emphasis added); Dkt.

### B. Treating Physician

Next, Leffingwell argues the ALJ did not provide substantial evidence to support her decision to give little weight to the opinion of Leffingwell's treating physician, Thomas Stewart, M.D. ("Dr. Stewart"). When analyzing the proper weight to give to the opinion of a treating physician, the ALJ must first determine whether the opinion is entitled to controlling weight. The ALJ must give a treating physician's opinion controlling weight if it is both "(1) supported by medical findings; and (2) consistent with substantial evidence in the record." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)). If the ALJ finds the treating physician is not entitled to controlling weight, she must then determine how much weight the opinion is due. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). When determining the proper weight to give the opinion of a treating physician, an ALJ must consider several factors, including: 1) the length, nature, and extent of the treatment relationship, 2) the frequency of examination, 3) the types of tests performed, 4) whether the physician supported his or her opinions with sufficient explanations, and 5) whether the physician specializes in the medical conditions at issue. *Id.*; 20 C.F.R. § 404.1527. If the ALJ "discounts the physician's opinion after considering these factors," a reviewing court "must allow that decision to stand so long as the ALJ minimally articulated his reasons" for doing so. *Elder*, 529 F.3d at 415 (internal quotations marks and alteration omitted).

Dr. Stewart opined Leffingwell could sit 4 hours per day, stand/walk 2 hours per day, and lift and/or carry less than 10 pounds occasionally. [R. at 29-30, 1268-73, 1318-23.] He also opined Leffingwell could not stoop, twist, or climb ladders or stairs, would miss more than 4 days of work per month, and would frequently lose attention and concentration at work. [*Id.*] In

---

17 at 25-26.] However, the Court need not address this issue. Since Leffingwell supplied no evidence to support he had deficits in adaptive functioning prior to age 22, any error by the ALJ is harmless.

contrast, the state agency physicians opined Leffingwell could perform light exertional work within 12-months of his back surgery. [R. at 30.] The ALJ gave "little weight" to Dr. Stewart's opinion because he is not an orthopedic specialist, his opinion was inconsistent with the opinions of the state agency reviewing physicians, and Dr. Stewart's treatment notes contained minimal clinical findings to support his opinion. [*Id.*] Leffingwell argues the ALJ mischaracterized Dr. Stewart's treatment notes and failed to explain why she gave more weight to the state agency physicians than his treating physician. The Court disagrees.

The ALJ properly explained why she gave greater weight to the opinions of the state agency physicians than she did to Dr. Stewart's opinion. The ALJ noted that Dr. Stewart "is a family practitioner, not an orthopedic specialist or pain management specialist." [R. at 30.] This is a proper factor to consider when determining how much weight to give to a treating physician's opinion. *See* 20 C.F.R. § 404.1527(c)(2)(5). Furthermore, the ALJ explained that the state agency physicians had more records available for them to review than Dr. Stewart had. [R. at 30.] Finally, the ALJ noted that Dr. Stewart's treatment notes by 12 months after the surgery contained minimal clinical findings to support his opinion. [*Id.*]

In his reply brief, Leffingwell cites to various medical records he claims support Dr. Stewart's opinion. [*See* Dkt. 19 at 8-10.] However, all of these notes reference Leffingwell's condition before or within months after his back surgery and alleged onset of his disability. [*Compare id.*, *with* R. at 20, 581 (back surgery on September 29, 2011).] The ALJ specifically stated Dr. Stewart had minimal clinical findings "to support his opinion **by 12 months after** the alleged onset date." [R. at 30 (emphasis added).] Since Dr. Stewart opined as to Leffingwell's limitations on February 7, 2013, more than two years after Leffingwell's surgery, Dr. Stewart's clinical notes 12 months after the surgery are more probative of the supportability of his opinion than his medical notes around the time of the surgery. [R. at 1323.] Thus, the ALJ had substantial

8

evidence to conclude that Dr. Stewart's minimal clinical findings by 12 months after Leffingwell's surgery undermines his opinion.

In sum, the ALJ "minimally articulated" his reasons for giving Dr. Stewart's opinion little weight. Specifically, she noted Dr. Stewart was a family practitioner who did not specialize in the area about which he was giving an opinion, the state medical examiners had more information upon which to base their opinions, and Dr. Stewart's treatment notes provided minimal clinical findings to support his decision. Thus, the Court finds the ALJ did not err in assigning Dr. Stewart's opinion little weight.

### C.  Dr. Perrone-McGovern's Opinion

Additionally, Leffingwell argues the ALJ ignored evidence from state medical expert Kristin Perrone-McGovern ("Dr. Perrone-McGovern") that supported his claim for disability. Specifically, Dr. Perrone-McGovern opined Leffingwell was likely to work more slowly than most, and was "likely unable to be able to do a simple repetitive task continuously for a two hour period due to reported back injury and reported symptoms of depression." [R. at 692.] The ALJ agreed with Dr. Perrone-McGovern that Leffingwell would likely work slower than others, but did not mention Dr. Perrone-McGovern's opinion that Leffingwell could not do simple repetitive tasks continuously for a two hour period. [R. at 28.] Leffingwell argues the ALJ erred by not referencing Dr. Perrone-McGovern's opinion when making her decision. The Court disagrees.

"An ALJ must consider all medical opinions in the record." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). This includes medical opinions from state agency medical sources. *Eacret v. Colvin*, No. 15-C-136, 2015 WL 6965868, at *4 (E.D. Wis. Nov. 10, 2015) (citing S.S.R. 96-6p). However, an ALJ is not required to mention every piece of evidence in the record in writing when making her decision. *Roddy*, 705 F.3d at 636. The ALJ explicitly referenced Dr. Perrone-McGovern's opinion in her decision, crediting her opinion that Leffingwell would work

9

slower than others while finding her diagnosis of major depressive order contrary to other evidence in the record. [R. at 25, 28.] Furthermore, the ALJ considered the results of an IQ test Dr. Perrone-McGovern administered to Leffingwell, and Dr. Perrone-McGovern's explanation for those scores. [*Id.*] Thus, the Court finds the ALJ met her obligation to consider the medical opinion evidence of Dr. Perrone-McGovern. *See Brown v. Colvin*, No. 13-CV-370-BBC, 2014 WL 2050269, at *2-3 (W.D. Wis. May 16, 2014).

### D.  Credibility

Leffingwell also argues the ALJ failed to properly evaluate the credibility of Leffingwell's statements regarding his back pain. [Dkt. 20 at 27-30.] In assessing a claimant's credibility when the allegedly disabling symptoms are not objectively verifiable, such as allegations of pain, an ALJ must first determine whether those symptoms are supported by medical evidence. *See* S.S.R. 96–7p; *Arnold v. Barnhart,* 473 F.3d 816, 822 (7th Cir. 2007).  If not, the ALJ is required to "consider the entire case record and give specific reasons for the weight given to the individual's statements." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (quoting S.S.R. 96–7p). The ALJ "should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" *Id.* (quoting 20 C.F.R. § 404.1529(c) (2)-(4)). An ALJ's credibility determination will not be overturned unless it is "patently wrong." *Elder*, 529 F.3d at 413.

Leffingwell testified he has constant back and hip pain that gets worse when he moves around. [R. at 27.] The pain varies from a 6 to 10 on a scale where 10 is the worst pain possible, and he wears his back brace when he leaves home. [*Id.*] The ALJ found Leffingwell's impairments could reasonably be expected to cause these alleged symptoms. [*Id.*] However, the

ALJ concluded Leffingwell's allegations regarding the intensity, persistence, and limiting effects of his pain were not credible. [*Id.*]

The ALJ noted that the objective medical records showed consistent improvement after Leffingwell's back surgery. [R. at 29.] This improvement was consistent with the opinion of the state agency physicians, who opined Leffingwell would be able to undertake light exertional work by 12 months after the surgery. [*Id.*] She also noted that Leffingwell's treatment for his back pain was limited to prescription pain medications and only one visit to the ER after a motor vehicle accident in January 2013. [*Id.*] Finally, she mentioned that Leffingwell refused to see a pain management specialist regarding his back pain. [*Id.*]

Leffingwell argues his longitudinal history of complaints regarding his back pain shows that his allegations are credible. *See* S.S.R. 96-7. However, the ALJ considered Leffingwell's longitudinal history of complaints when making her determination. [R. at 29.] In fact, the ALJ found Leffingwell's allegations of **some** chronic back pain credible. [*Id.*] Nevertheless, the ALJ ultimately concluded that the alleged **severity** of Leffingwell's back pain was not credible. [*Id.*] The objective medical evidence, state agency physicians, and Leffingwell's course of treatment support this determination. Thus, the ALJ's credibility determination regarding Leffingwell's back pain was not "patently wrong."[4]

### E. Illiteracy

Finally, Leffingwell argues the ALJ erred by failing to account for his illiteracy in her RFC assessment and hypothetical to the Vocational Expert ("VE"). The ALJ found that

---

[4] Leffingwell also argues evidence he submitted to the Appeals Council after the ALJ's decision supports the credibility of his assertions of severe back pain. [Dkt. 17 at 33.] However, a court may not consider evidence submitted to the Appeals Council when reviewing the decision of an ALJ. *Stepp v. Colvin*, 795 F.3d 711, 721 n.2 (7th Cir. 2015) (citing *Eads v. Sec'y of Dep't of Health & Human Servs.*, 983 F.2d 817-18 (7th Cir. 1993)). Furthermore, Leffingwell first raised the argument that the Court should remand this case pursuant to 20 C.F.R. § 404.970(b) in his reply brief, and therefore the argument is waived. *Rives v. Whiteside Sch. Dist. No. 115*, 575 F. App'x 678, 680 (7th Cir.2014).

11

Leffingwell was "illiterate" but "able to communicate in English." [R. at 30.] A claimant is "illiterate" if "the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name."[5] 20 C.F.R. § 404.1564. The Court finds the ALJ erred by not including this limitation in her RFC assessment and hypothetical to the VE.

In the Seventh Circuit, the ALJ is required "to orient the VE to the totality of a claimant's limitations." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 & n.3 (collecting cases). This includes a claimant's limitations in reading. *See Vinson v. Astrue*, No. CIV. 10-1034-CJP, 2012 WL 625713, at *7 (S.D. Ill. Feb. 24, 2012); *Sellers v. Astrue*, No. 10 C 7951, 2012 WL 280714, at *11 (N.D. Ill. Jan. 31, 2012); *Treat v. Colvin*, No. 1:13-CV-0002-SEB-DML, 2014 WL 1256006, at *7 (S.D. Ind. Mar. 25, 2014). "[T]he most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical." *O'Connor-Spinner*, 627 F.3d at 619. The ALJ failed to do so here. [*See* R. at 85-94.] While the ALJ asked the VE to assume someone with Leffingwell's education, [R. at 87,] she did not "ask the VE to make any specific assumption about [his] ability to read and write."[6] *Vinson*, 2012 WL 625713, at *6. Thus, the ALJ did not relate Leffingwell's illiteracy to the VE when posing her hypothetical.

The Commissioner makes two arguments in defense of the ALJ's hypothetical. [Dkt. 18 at 19-20.] First, she argues Leffingwell is not illiterate, and therefore is capable of performing the jobs the ALJ found he could perform. [*Id.*] She cites to Leffingwell's testimony and educational

---

[5] At one point in her decision, the ALJ stated that Leffingwell was "functionally illiterate," without defining that term. [R. at 28.] However, in her official findings, she concluded Leffingwell was "illiterate," and cited to the regulations defining illiteracy. [R. at 30 (citing 20 §§ C.F.R. 404.1564; 416.964.)]

[6] The VE's testimony at the hearing also indicates she did not consider Leffingwell's illiteracy when giving her opinion. [R. at 87-94.] In response to the ALJ's various hypotheticals, the VE opined the hypothetical claimant could perform jobs that require a language development level of two or three. [*Id.*] Had the VE considered Leffingwell's illiteracy, it seems likely she would have, at the very least, limited the hypothetical claimant to jobs with a language development score of one.

records to support this assertion. [*Id.* at 20.] However, the ALJ explicitly found Leffingwell was illiterate, and cited to the regulations defining that term. [R. at 30.] The Court may not reweigh the evidence regarding the extent of Leffingwell's reading abilities. *Overman v.* 546 F.3d at 462 (citing *Schmidt*, 201 F.3d at 972). Once the ALJ weighed the evidence and concluded Leffingwell was illiterate, she was obligated to adequately articulate that limitation to the VE. *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007) ("ALJ is required . . . to incorporate into his hypotheticals those impairments and limitations that he accepts as credible.")

Next, the Commissioner argues any error in the RFC was harmless because Leffingwell could still engage in unskilled work despite his illiteracy. [Dkt. 18 at 19-20.] An ALJ's error is only harmless if the Court can say with "great confidence" the ALJ will reach the same result on remand. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). The jobs the ALJ found Leffingwell could perform require a language development score of one, the lowest language development level in the Dictionary of Titles ("DOT"). [R. at 31;] *see also* DOT 209.587-034; DOT 323.687-0124; DOT 311.677-010. A language development score of one refers to someone who is able to "[r]ecognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. . . . Print simple sentences containing subject, verb, and object, and series of numbers, names and address." *See* DOT Appendix C. The ALJ found Leffingwell was illiterate, meaning that he cannot "read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. § 404.1564. It is at best uncertain whether an "illiterate" claimant would be able to perform a job requiring a language development score of one. *See Vinson*, 2012 WL 625713, at *7. Thus, the Court cannot say "with great confidence" the ALJ will reach the same result on remand.[7]

---

[7] The Commissioner also cites to the Medical-Vocational Guidelines to support the ALJ's decision. [Dkt. 18 at 20.] The Medical-Vocational Guidelines indicate that "the primary functions in the bulk of unskilled work relate to working with things . . . and in these work functions at the unskilled level, literacy or ability to communicate in

## V. Conclusion

The Court finds the ALJ failed to articulate Leffingwell's illiteracy in her RFC assessment and hypothetical to the VE. For this reason, the Magistrate Judge recommends that the District Judge **REVERSE and REMAND** the matter for further consideration. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated: 22 DEC 2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com

Thomas B. Browder
KELLER & KELLER
tomb@2keller.com

Timothy E. Burns
KELLER & KELLER
timb@2keller.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

---

English has the least significance." Medical–Vocational Guidelines, Part 404, Subpart P, App. 2, § 201.00(i). Thus, "the functional capability for a **full range of sedentary work** represents sufficient numbers of jobs . . . even if [the claimant is] illiterate or unable to communicate in English." *Id.* (emphasis added). However, Leffingwell's RFC assessment does not indicate he is capable of a **full range of sedentary work.** [R. at 26.] Rather, the ALJ found Leffingwell can perform light work with some exceptions and non-exertional limitations. [*Id.*] Thus, the Medical-Vocational Guidelines are insufficient to determine the availability of jobs for Leffingwell. *See Murphy v. Colvin*, 759 F.3d 811, 819-20 (7th Cir. 2014), *as amended* (Aug. 20, 2014) ("if the claimant has exertional and non-exertional limitations, an ALJ cannot rely solely on" the Medical-Vocational Guidelines.)