UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN A. LEFFINGWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:15-cv-00015-TWP-MJD |
| ) | |
| CAROLYN W. COLVIN, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ADOPTING, IN PART, THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant, Carolyn W. Colvin, Commissioner of Social Security ("Commissioner"), requests judicial review of the Magistrate Judge's Report and Recommendation, wherein the Magistrate Judge recommended that this case be reversed and remanded. For the reasons stated below, the Court **OVERRULES** the Commissioner's objection and **ADOPTS in part** the Magistrate Judge's Report and Recommendation, with additional discussion and conclusions. Accordingly, the Court **ORDERS** that this case be **REVERSED** and **REMANDED**.

## I. BACKGROUND

### A. Procedural History

On October 11, 2011, John A. Leffingwell ("Leffingwell") filed his application for Disability Insurance Benefits ("DIB") under Subchapter II of the Social Security Act ("the Act"), and for Supplemental Security Income ("SSI") under Subchapter XVI of the Act. [1]  *See* 42

---

[1] The regulations governing the determination of disability for Disability Insurance Benefits are found at 20 C.F.R. 401.1501 *et seq.*, while the Supplemental Security Income regulations are set forth at 20 C.F.R. 416.901 *et seq.* In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. *Compare, e.g.*, 20 C.F.R. § 404.1520, *with* 20 C.F.R. § 416.920. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

U.S.C. §§ 416(i), 423(d).  Leffingwell listed broken back sternum, spine fusion, depression, hypertension, and inability to read and write as his disabling impairments.  (Filing No. 14-6 at 55.) Hiss application was denied initially on December 29, 2011, and upon reconsideration on March 28, 2012.

Leffingwell timely requested a hearing on his application and on February 8, 2013, Administrative Law Judge Patricia Melvin ("the ALJ") held a hearing regarding Leffingwell's application.  (Filing No. 14-2 at 42-94.)  On June 17, 2013, the ALJ issued her decision, denying Leffingwell's application for DIB and SSI.  (Filing No. 14-2 at 21-33.)  Thereafter, on November 4, 2014, the Appeals Council denied Leffingwell's request for review, making the ALJ's decision the final decision of the Commissioner for the purposes of judicial review.

On January 5, 2015, Leffingwell filed a Complaint in this Court and the undersigned referred this case to Magistrate Judge Mark J. Dinsmore (the "Magistrate Judge") for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B).  (Filing No. 20.)  On December 22, 2015, the Magistrate Judge filed his Report and Recommendation. (Filing No. 21.)  On January 4, 2016, the Commissioner filed an objection.  (Filing No. 22.)

**B.     Medical History**

In his Report and Recommendation, the Magistrate Judge incorporated by reference the facts cited in Leffingwell's opening brief.  (*See* Filing No. 21 at 1 n.1.) The parties did not object, therefore, this Court also incorporates by reference the facts stated in Leffingwell's opening brief, citing additional facts as necessary to resolve the Commissioner's objection.

**C.     Vocational Expert's Testimony**

At the hearing before the ALJ, impartial Vocational Expert, Sharon Ringenberg ("the VE"), testified regarding the nature of Leffingwell's past work and to additional jobs in the community.

2

(Filing No. 14-2 at 87-95.) The ALJ described three hypotheticals to the VE, beginning with the following,

> [Assume] someone of the claimant's age, educational background, and vocational history, who can lift and carry 20 pounds occasionally, 10 pounds frequently, who can stand and walk six hours of an eight hour day, and can sit for six hours of an eight hour day with normal breaks, who can never climb ladders, ropes, and scaffolds, can occasionally climb ramps and stairs, and can occasionally balance, stoop, kneel, crouch, and crawl.

*Id*. at 88. In response, the VE testified that the hypothetical individual could not perform Leffingwell's past work, but that individual could find employment as a cashier, retail marker, or fast food worker. *Id*. at 89.

The ALJ then asked the VE to add to the hypothetical the limitation of simple, routine, and repetitive tasks consistent with unskilled work and work environment free of fast-paced production requirements, which is defined as constant activity with work tasks performed sequentially in rapid succession, involving only simple, work-related decisions with few if any workplace changes. *Id*. In response, the VE concluded that it would eliminate the possibilities of a cashier and fast-food worker which she had previously described. *Id*. However, that the individual could perform the jobs of a housekeeper cleaner and a dining room attendant. *Id*. at 90.

Finally, the ALJ set forth a third hypothetical to the VE.

> [A]ssuming someone of the claimant's age, education, and vocational background, who can lift and carry 10 pounds occasionally, less than 10 pounds frequently, who can stand and walk for two hours of an eight hour day, and can sit for six hours of an eight hour day with normal breaks, who can occasionally climb ramps and stairs, but who can never balance, stoops, kneel, crouch, and crawl that handling is limited to occasional bilaterally, and such a person would be limited to jobs that can be performed while using a handheld assistive device, which is required only for uneven terrain or prolonged ambulation.

*Id*. In response, the VE concluded that the individual could perform the jobs of a callout operator and surveillance system monitor. *Id*. at 91.

3

The ALJ did not mention Leffingwell's illiteracy in any of her three hypotheticals to the VE.

**D.   ALJ's Decision**

In her decision, the ALJ first determined that Leffingwell met the insured status requirements of the Act through June 30, 2014 and had not engaged in substantial gainful activity since September 28, 2011. (Filing No. 14-2 at 23.) At step two, the ALJ found Leffingwell's borderline intellectual functioning, early degenerative disc disease at T12 to L3, degenerative disc disease with diffuse disc bulging at L5 to S1, and osteoarthritis to be severe impairments. *Id*. However, at step three the ALJ found Leffingwell did not have an impairment that met or medically equaled a Listing, evaluating Listing 1.00 for Leffingwell's musculoskeletal impairments, and Listings 12.02, 12.05, 12.06, and 12.09 for Leffingwell's mental impairments. *Id*. at 24-27.

Thereafter, the ALJ determined that Leffingwell had the residual functional capacity ("RFC") to perform "light work" with the following additional limitations,

> [H]e can lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6.8 hours per workday with normal breaks; never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; he is limited to work that is simple, routine, repetitive tasks consistent with unskilled work; in a work environment free of fast paced production requirements defined as constant activity with work performed sequentially in rapid succession; involving only simple, work-related decisions, with few, if any work place changes.

*Id*. at 27. In making this finding, the ALJ also concluded that Leffingwell was "functionally illiterate". *Id*. at 29. (*See also Id*. at 31) ("The claimant is illiterate and is able to communicate in English.") The ALJ then determined, at step four, that Leffingwell was unable to perform his past relevant work. *Id*. at 31. However, at step five, considering Leffingwell's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers

that Leffingwell could perform. *Id*. at 31-32. Specifically, the ALJ found Leffingwell was able to perform work as a retail marker, housekeeper/cleaner, and dining room attendant. *Id*. at 32. Based on these findings, the ALJ concluded that Leffingwell was not disabled, as defined by the Social Security Act. *Id*. at 32-33.

## II.  LEGAL STANDARD

A.  Review of the Magistrate Judge's Report and Recommendation

A district court may assign dispositive matters to a magistrate judge, in which case the magistrate judge may submit to the district judge only a report and recommended disposition, including any findings of fact. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009). *See also* 28 U.S.C. § 636(b)(1)(B)(2012); Fed. R. Civ. P. 72(b)(1). The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to "accept, reject, or modify" the findings and recommendations, and the district court need not accept any portion as binding. 28 U.S.C. § 636(b)(1)(2012) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions"); Fed. R. Civ. P. 72(b)(3). *See also Sweet v. Colvin*, No. 1:12-CV-439, 2013 WL 5487358, at *1 (S.D. Ind. Sept. 30, 2013); *Schur*, 577 F.3d at 760-61.

After a magistrate judge makes a report and recommendation, either party may object within fourteen days of being served with a copy of the same. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). When a party raises specific objections to findings and recommendations made within the magistrate judge's report, the district court is required to review those elements *de novo*, determining for itself whether the Commissioner's decisions as to those issues are supported by substantial evidence or were the result of an error of law. 28 U.S.C. § 636(b)(1)(2012); Fed. R.

Civ. P. 72(b)(3). *See also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). The court may, however, defer to those conclusions to which timely objections have not been raised by a party. *Schur*, 577 F.3d at 760-61; *Sweet*, 2013 WL 5487358, at *1. Further, if a party fails to object to a magistrate judge's report and recommendation, or objects on some issues and not others, he waives appellate review of the issues to which he has not objected. *Zema Sys. Corp.*, 170 F.3d at 739.

### B. Review of the Commissioner's Final Decision

When the Appeals Council denies review, the ALJ's ruling becomes the final decision of the Commissioner. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009); *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). Thereafter, in its review, the district court will affirm the Commissioner's findings of fact if they are supported by substantial evidence. 42 U.S.C. § 405(g)(2012); *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon*, 270 F.3d at 1176; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). *See also Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (noting that substantial evidence must be "more than a scintilla but may be less than a preponderance").

In this substantial-evidence determination, the court does not decide the facts anew, re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Accordingly, if the Commissioner's decision is adequately supported and reasonable minds could differ about the

disability status of the claimant, the court must affirm the decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

While, the ALJ need not evaluate every piece of testimony and evidence submitted in writing, the ALJ's decision must, nevertheless, be based upon consideration of all the relevant evidence. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). In this vein, the ALJ may not discuss only that evidence that favors his ultimate conclusion but must confront evidence that contradicts his conclusion and explain why the evidence was rejected. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

Further, the ALJ's decision must adequately demonstrate the path of reasoning, and the evidence must lead logically to the ALJ's conclusion. *Terry*, 580 F.3d at 475; *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). Indeed, to affirm the Commissioner's final decision, "the ALJ must build an accurate and logical bridge from the evidence to [his) conclusion." *Zurawski*, 245 F.3d at 888-89; *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

C.      **Disability Determination**

Under the Act, a claimant is entitled to DIB or SSI if he establishes he has a disability. 42 U.S.C. §§ 423(a)(1)(E), 1382. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). To justify a finding of disability, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

7

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id*. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's) physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three of the sequential analysis, the ALJ must determine whether the claimant's impairment or combination of impairments meets or equals the criteria for any of the conditions included in 20 C.F.R. Part 404, Subpart P, App'x 1 (the "Listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1. The Listings are medical conditions defined by criteria that the Social Security Administration has pre-determined to be disabling. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); 20 C.F.R. §§ 404.1525(a), 416.925(a). *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1. For each Listing, there are objective medical findings and other findings that must be met or medically equaled to satisfy the criteria of that Listing. 20 C.F.R. §§ 404.1525(c)(2)-(5), 416.925(c)(2)-(5).

If the claimant's impairments do not meet or medically equal a Listing, then the ALJ assesses the claimant's RFC for use at steps four and five. 20 C.F.R. §§ 404.1520(e), 416.920(a)(4)(iv). Residual functional capacity is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675-76; 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1).

At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the ALJ determines whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (2012). The claimant is not disabled if he can perform any other work in the relevant economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (2012). The combined effect of all of a claimant's impairments shall be considered throughout the disability determination process. 42 U.S.C. §§ 423(d)(2)(B); 1382c(a)(3)(G) (2012). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner at the fifth step. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

### III.  DISCUSSION

The Commissioner objects to the Magistrate Judge's recommendation of remand on the issue of the ALJ's failure to include illiteracy in the hypothetical question to the VE. In response, Leffingwell also raised challenges to the Magistrate Judge's conclusions regarding the ALJ's Listing determination and the additional evidence he submitted to the Appeals Council. The Court will review those three issues *de novo*. *See* 28 U.S.C. § 636(b)(1)(2012); Fed. R. Civ. P. 72(b)(3). *See also Zema Sys. Corp.*, 170 F.3d at 739. The remaining issues, which the parties did not object to, will not be reviewed and the Court **ADOPTS** those portions of the Magistrate Judge's Report and Recommendation.

A.  **Incomplete Hypothetical**

The Commissioner argues that the Magistrate Judge erred in finding that the ALJ failed to properly include Leffingwell's illiteracy in her hypotheticals to the VE. In this regard, the

Commissioner argues that the record evidence does not support the ALJ's finding of illiteracy, and, even if the ALJ failed to include illiteracy in the hypothetical, the error was harmless.

As the Magistrate Judge correctly pointed out, in the Seventh Circuit, the ALJ is required "to orient the VE to the totality of a claimant's limitations." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 n.3 (7th Cir. 2010) ("the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical."). This includes a claimant's limitations in reading. *See Treat v. Colvin*, No. 1:13-cv-0002-SEB-DML, 2014 WL 1256006, at *7 (S.D. Ind. Mar. 25, 2014) ("if a person is illiterate, a vocational expert must take that into account in determining jobs available to a person who fits the claimant's vocational profile"); *Vinson v. Astrue*, Civil No. 10-1034-CJP, 2012 WL 625713, at *7 (S.D. Ill. Feb. 24, 2012); *Sellers v. Astrue*, No. 10 C 7951, 2012 WL 280714, at *11 (N.D. Ill. Jan. 31, 2012).

At least twice in her opinion the ALJ clearly and unequivocally determined that Leffingwell was illiterate. (*See* Filing No. 14-2 at 29) ("[Leffingwell] is functionally illiterate"); (Filing No. 14-2 at 31) ("The claimant is illiterate and is able to communicate in English.".) The ALJ made this conclusion after an extensive discussion of the claimant's testimony and his intelligence testing. (*See Id*. at 28-29.) Further, in so concluding, the ALJ also cited to the applicable regulations defining illiteracy. *Id*. at 31. These regulations define illiteracy as "the inability to read or write." 20 C.F.R. §§ 404.1564(b)(1); 416.964(b)(1). These regulations also explain that a claimant is considered illiterate if "the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name". *Id*.

As such, there can be no doubt that the ALJ intended to conclude that Leffingwell was indeed illiterate. Because the ALJ made a factual conclusion and supported it with substantial evidence in the record, the ALJ's factual conclusion is entitled to deference, and the Magistrate

Judge properly concluded that the Court is not at liberty to reweigh the evidence. *Elder*, 529 F.3d at 413; *Craft*, 539 F.3d at 673. In addition, the Magistrate Judge also properly concluded that, once the ALJ made her illiteracy finding, the ALJ was obligated to disclose it to the VE in her hypotheticals. *O'Connor-Spinner*, 627 F.3d at 619; *Treat*, 2014 WL 1256006, at *7; *Vinson*, 2012 WL 625713, at *7; *Sellers*, 2012 WL 280714, at *11. Because the ALJ never mentioned Leffingwell's illiteracy, despite proposing three different hypotheticals to the VE, the ALJ's hypotheticals cannot be said to have "orient[ed] the VE to the totality of [Leffingwell's] limitations". *See O'Connor-Spinner*, 627 F.3d at 619. Consequently, the undersigned agrees with the Magistrate Judge's conclusion that remand was necessary for the ALJ to repeat this portion of her evaluation.

The Court also rejects the Commissioner's argument that the error was harmless. "Harmless errors are those that do not affect the ALJ's determination that a claimant is not entitled to benefits". *Scott v. Astrue*, 730 F. Supp. 2d 918, 935 (C.D. Ill. 2010); *Sanchez v. Barnhart*, 467 F.3d 1081, 1082-83 (7th Cir. 2006) ("errors if harmless do not require (or indeed permit) the reviewing court to upset the agency's decision"). *See also Salt River Project Agric. Improvement and Power Dist. v. U.S.*, 762 F.2d 1053, 1060 n. 8 (D.C. Cir. 1985) ("[w]hen it is clear that based on the valid findings the agency would have reached the same ultimate result, we do not improperly invade the administrative province by affirming.").

However, despite the Commissioner's interpretation of the Grid Rule, Leffingwell's criteria do not exactly match that of 202.00, because the ALJ additionally found that Leffingwell's ability to perform all of the requirements of "light work" had been impeded by numerous additional limitations. (*See* Filing 14-2 at 27.) Thus, Grid Rule 202.00 does not mandate a finding of not-

disabled but simply serves as a framework for making the determination. As *Cannon v. Harris*, explains

> The regulations make clear . . . that the guidelines are not fully applicable in all cases in which the evaluation process reaches the fifth step. The guidelines are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, so-called exertional limitations. They do not take into consideration nonexertional limitations such as certain mental, sensory, or skin impairments. For this reason, where nonexertional limitations have been shown, either alone or in combination with exertional limitations, the guidelines cannot be used to direct a finding of not disabled. In such cases a finding of not disabled can be made only after further consideration of the claimant's nonexertional impairments in light of his unique vocational characteristics.

651 F.2d 513, 517 (7th Cir. 1981) (internal citations omitted). Accordingly, because the ALJ did not simply limit Leffingwell to "light work" in her RFC, the ALJ was required to discuss Leffingwell's additional limitations with the VE rather than rely solely on the Grid Rule as the Commissioner suggests. *Id*. As a result, the ALJ's failure to include Leffingwell's illiteracy in her hypotheticals to the VE cannot be considered harmless as the Commissioner suggests.

The Court finds no error in the Magistrate Judge's Report and Recommendation regarding this issue, and agrees that remand is appropriate on this issue.

**B.** **Listing Evaluation**

Leffingwell also challenges the Magistrate Judge's conclusion regarding the ALJ's Listing 12.05 evaluation. Specifically, Leffingwell argues that the Magistrate Judge erred in concluding that he failed to cite evidence of adaptive deficits in functioning prior to age 22. In support, Leffingwell cites the opinion of a school psychologist who opined that his academic achievement was "comparable to the performance of a mentally handicapped youngster of the same age"; the consultative examiner's diagnosis of "Mild Mental Retardation"; and another examiner's observation that Leffingwell was "poorly educated".

In this regard, the Court does not agree that the ALJ failed to properly consider the evidence of Leffingwell's intellectual and adaptive deficits. Instead, the Court notes that the ALJ's discussion of Leffingwell's mental limitations was extensive and supported by significant evidence in the record. Indeed, the ALJ spent no less than three full pages discussing the evidence of Leffingwell's mental impairments in regard to her Listing conclusion and nearly two additional pages in regard to her RFC determination. (*See* Filing No. 14-2 at 24-29.) Further, the ALJ specifically addressed the consultative examiner's diagnosis, explaining that Leffingwell's lower IQ scores later in life were likely attributable to his alcohol abuse. *Id*. at 26. In this regard, the ALJ repeatedly explained that Leffingwell's IQ scores before the age of 22 were higher and did not demonstrate a finding of mental retardation. *Id*. In addition, the ALJ also explained that Leffingwell's lower academic scores before the age of 22 were likely the result of Leffingwell's illiteracy or another learning disability. *Id*.

Each of these conclusions is more than adequately explained and sufficiently supported by the record evidence. As a result, for the same reason that the Court cannot reweigh the evidence supporting the ALJ's conclusion regarding Leffingwell's illiteracy, the Court is also not at liberty to review the evidence supporting the ALJ's Listing determination. *Elder*, 529 F.3d at 413; *Craft*, 539 F.3d at 673.

Additionally, although the ALJ did not specifically discuss the opinion of the school psychologist[2] or the examiner's observation, the ALJ adequately discussed significant evidence that is remarkably similar in content. For instance, the ALJ discussed, at length, Leffingwell's

---

[2] It does not appear that Leffingwell's school psychologist was a medical professional, as her signature indicated an educational doctorate rather than a medical degree. (*See* Filing No. 14-7 at 10) ("Judith Trelor, Ed.D."). As such, no argument can be made that the ALJ was required to afford the school psychologist's opinion greater weight than the rest of the evidence in the record. *See* SSR 06-03p ("only acceptable medical sources can be considered treating sources . . . whose medical opinions may be entitled to controlling weight"); *Wools v. Astrue*, No. 3:07-cv-135-WGH-RLY, 2009 WL 1148219, at *11 (S.D. Ind. Apr. 28, 2009).

difficulties in school, noting his low academic scores, his participation in special education classes, his learning disability, and his illiteracy.  (*See* Filing No. 14-2 at 25-26, 29.)

The ALJ is not required "to mention every piece of evidence".  *Craft*, 539 F.3d at 673.  Instead, the ALJ must consider the relevant evidence and "provide an accurate and logical bridge between the evidence and the conclusion".  *Id*.; accord *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 1997) (noting that an ALJ "must articulate, at least minimally, his analysis of the evidence so that this court can follow his reasoning.").  In this regard, the Court considers the ALJ's Listing determination to be adequately explained and sufficiently supported.  As a result, the Court agrees with the Magistrate Judge that remand is not appropriate for this issue.

**C.**     **New Evidence**

Finally, Leffingwell asserts that his argument regarding additional evidence submitted to the Appeals Council was improperly rejected by the Magistrate Judge as untimely.  In his opening brief, Leffingwell contends that the Appeals Council's denial of his appeal, including newly submitted evidence regarding treatment for his back condition, is unreviewable.  (Filing No. 17 at 33.)

The Social Security Administration has well-established procedures for submitting and reviewing newly discovered evidence to the Appeals Council.  *See* 20 C.F.R. §§ 404.970(b), 416.1470(b); Social Security Admin., Office of Hearing and Appeals, *Hearings, Appeals and Litigation Law Manual* ("HALLEX"), I-3-3-6, I-3-5-20; *Farrell v. Astrue*, 692 F.3d 767, 770-72 (7th Cir. 2012); *Perkins v. Chater*, 107 F.3d 1290, 1293-94 (7th Cir. 1997).  The relevant regulation, concerning newly discovered evidence, reads as follows,

> In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. In reviewing decisions other than those based on an

> application for benefits, the Appeals Council shall evaluate the entire record including any new and material evidence submitted. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 416.1470(b). *See also* 20 C.F.R. § 404.970(b) (using nearly identical language for DIB appeals), HALLEX, I-3-3-6, I-3-5-20. The Seventh Circuit has repeatedly explained that a district court reviews whether the Appeals Council made an error of law in applying this regulation *de novo*. *See, e.g.*, *Farrell*, 692 F.3d at 771; *Perkins*, 107 F.3d at 1294.

Additionally, HALLEX requires the Appeals Council to explain why evidence submitted for the first time to the Appeals Council was considered either not new or not material by the Council. *See* HALLEX I-3-5-20. Neither explanation is plainly apparent on the face of the Appeals Council's decision to deny review in Leffingwell's case. Instead, the Appeals Council provided only perfunctory language that "this information does not provide a basis for changing the [ALJ's] decision". (*See* Filing No. 14-2 at 3.)

As a result, because it is not clear whether the Appeals Council actually evaluated the new and seemly material evidence, and because the Court considers remand to already be required for the ALJ to submit new hypotheticals to the VE, the Court considers it appropriate for the ALJ to review the new evidence herself and to determine whether the new evidence impacts her prior determinations regarding Leffingwell's back condition. For this reason, the Court substitutes its analysis for that of the Magistrate Judge on this issue and concludes that remand is appropriate for this reason as well.

### IV. <u>CONCLUSION</u>

For the aforementioned reasons, the Court **OVERRULES** the Commissioner's Objection to the Magistrate Judge's Report and Recommendation. (Filing No. 22.) Accordingly, the Court **ADOPTS in part** the Magistrate Judge's Report and Recommendation and **REVERSES** and

15

**REMANDS** the Commissioner's final decision.  (Filing No. 21.)  The Court will enter final judgment by separate order.

  **SO ORDERED.**

Date: 3/9/2016

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com

Thomas B. Browder
KELLER & KELLER
tomb@2keller.com

Timothy E. Burns
KELLER & KELLER
timb@2keller.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov